UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **MICHAEL H. CARDWELL** | * | **CIVIL ACTION NO. 07-0755** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Michael H. Cardwell, born January 30, 1973, filed applications for a period of disability, disability insurance benefits, and supplemental security income payments on April 26, 2005, alleging disability as of March 15, 2004, due to back problems.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence,

based on the following:

**(1) Records from Georgiana Hospital dated March 29, 2005**. Claimant was injured when the 18-wheeler in which he was riding hit a guardrail on a bridge and flipped. (Tr. 81). He complained of bilateral hip and lower back pain. His x-rays were negative for any acute fractures. He had some disc space narrowing between vertebral bodies L5 and S1. (Tr. 87).

**(2) Records from Dr. Jeffrey Fitter dated May 2, 2005 to April 6, 2006**. On May 2, 2005, claimant reported intermittent neck problems and upper back pain since his accident. (Tr. 102). He had a history of another motor vehicle accident in June, 1994, in which he sustained a compression fracture of his thoracic spine. He was left with long-term back discomfort, and was unable to continue to work as a nursing assistant because it involved heavy lifting of patients. He had worked as a truck driver until his recent accident.

On examination, claimant was 6 feet 2 inches tall, and weighed 232 pounds. He had a normal gait, benign cervical exam, and mild tenderness in the upper thoracic region and in the sacrum. Neurological examination was normal. He had no spasm.

X-rays showed old anterior compression fractures at T7 and T8 with about 50% loss of vertebral body height resulting in mild increased kyphosis. Dr. Fitter's impression was cervical, thoracic, and lumbar strains, and old compression fractures.

(Tr. 103). He recommended conservative treatment, and prescribed Vicodin and Flexeril.

On May 25, 2005, claimant reported that his low back pain was worse, tending to radiate into his buttocks, with hip pain. (Tr. 100). He mentioned that he had been under some emotional stress recently, which caused his chronic TMJ to flare up. Dr. Fitter continued conservative treatment.

Claimant reported on June 15, 2005, that chiropractic treatment had made his discomfort worse. (Tr. 98, 124-129). He had had a lot of recent anxiety, which he described as a chronic problem. Dr. Fitter prescribed Xanax and refilled claimant's Vicodin.

An MRI of the thoracic spine dated June 22, 2005, showed kyphosis of the lower dorsal spine with no acute fracture, subluxation or non-dessicated disc prolapse. (Tr. 93). The lumbar spine MRI showed early degenerative disc changes at the L4-L5 and L5-S1 levels, posterior spondylosis dessicated disc deformity with annular fissure at L4-L5, and a right paracentral posterior disc prolapse at L5-S1 affecting the right S1 nerve root region.

On July 13, 2005, Dr. Fitter reported that according to claimant's MRI report, claimant had had a significant disc rupture. (Tr. 141). However, in the absence of radicular symptoms and with claimant's thoracic region bothering him more than the

low back, Dr. Fitter was uncertain of the significance of this finding. He recommended conservative management with continued activity restrictions to tolerance.

On August 15, 2005, claimant reported that he had had some rather significant flare-ups of discomfort during the last month. (Tr. 140). He said that he had taken a car ride to Georgia and had been involved in a child custody dispute there, which had aggravated his discomfort. Dr. Fitter reported that claimant had an impressive-looking disc rupture at L5, but that it probably was not significant given his predominant mid-back pain and no radiating pain into the right leg.

On September 7, 2005, claimant complained of more lower back pain which radiated into his legs. (Tr. 139). Dr. Fitter recommended an epidural injection. Claimant did not have it done, because it was too expensive. (Tr. 138).

Claimant reported on January 19, 2006, that he had aggravated his back by riding by car from Georgia. (Tr. 136). He stated that he had won custody of his four children, but had been quite busy taking care of them and his ailing mother, which was just about a full-time job. Dr. Fitter continued conservative treatment.

On February 22, 2006, claimant complained of a serious increase in his lower back pain, and increased stress and aggravation of his symptoms after a deposition. (Tr. 135). He had restricted motion to 60 degrees forward flexion in the lumbar

spine.  The right straight leg raise appeared mildly positive.  Dr. Fitter recommended neurosurgical evaluation by Dr. McAllister.

Claimant saw Dr. McAllister on April 6, 2006, for pain in his back, right leg, and hip.  (Tr. 133).  Dr. McAllister noted that claimant's lumbar MRI showed no listhesis, stenosis, or foraminal stenosis. (Tr. 154).  His EMG showed some very mild radiculopathies, which could be seen in the average population with no complaints of pain.  (Tr. 133).

Dr. McAllister did not recommend any surgical intervention.  He thought that a family physician would be able to manage claimant's complaints with anti-inflammatories, muscle relaxants, and potentially mild analgesics. Dr. McAllister's impression was that claimant "will only be able to the lightest work activity if that."

(**3) Medical Source Statement dated July 19**.[1]   Dr. Fitter determined that claimant could sit about 8 hours, and stand/walk/drive about 3 hours, in a 6 1/2 to 8-hour workday. (Tr. 142).  He could frequently carry up to 10 pounds, occasionally carry up 11 to 20 pounds, and never carry more than 21 pounds.  He was able to bend, squat, kneel, and reach above the shoulder occasionally, but never crawl or climb. He could occasionally be exposed to heights, machinery, noise/vibrations, dust/fumes, and extreme temperatures.

---

[1] No year was noted on the form.

Claimant was able to use his hands for repetitive work actions. (Tr. 143). However, he could not use his feet for repetitive movements. His condition was affected by changes in the season.

Claimant's diagnosis was degenerative disease of the thoracic and lumbar spines. His prognosis for improvement was poor. Dr. Fitter determined that claimant could not reasonably be expected to engage in a full range of sedentary work consisting of 8 hours a day on a consistent and sustained basis.

**(4) Records from Dr. Fitter dated May 25, 2006 to July 10, 2006**. On May 25, claimant reported that he was doing the same. (Tr. 152). He was caring for his children at least part of the time, and brought three of them to his visit. His exam showed no significant changes, moderate restriction of motion in the lumbar spine with tenderness, primarily right sacroiliac and also in the low thoracic upper lumbar region. Dr. Fitter recommended conservative management.

On July 10, 2005, claimant complained of fairly severe symptoms since his last visit. (Tr. 151). He had called for refills of his medications three times, but was advised that he needed to wait two weeks before the addictive medications could be refilled.

Dr. Fitter noted that claimant was not a surgical candidate and, from his recent history, it appeared that he would require regular refills of his pain medications. Dr.

6

Fitter recommended that this treatment be handled by claimant's family physician, Dr. Randall Horton.

**(5) Claimant's Administrative Hearing Testimony**. At the hearing on August 8, 2006, claimant was 33 years old. (Tr. 166). He had custody of his four children, who ranged in age from 5 to 12. (Tr. 167). He had attended school through the tenth grade, and had acquired a GED.

Claimant obtained a certification as a nursing assistant. He had past work experience as a certified nursing assistant ("CNA"). While working as a CNA, he was involved in a automobile accident in 1994 in which he sustained compression fractures at T8 and 9. He had stopped working because he could no longer lift patients. (Tr. 168).

Afterwards, claimant had attempted bartending, but was unable to stand on his feet for very long. (Tr. 172-73). He had also worked as a cross country truck driver between accidents. (Tr. 173). He said that he could no longer work as a truck driver.

Claimant was involved in a second automobile accident on March 15, 2004, in which he was a passenger in an 18-wheeler and it turned over. (Tr. 168). He sustained a herniated disc at L5/S1 in that accident, which substantially increased his back pain. (Tr. 169). He also had degenerative disc disease, radiculopathy, pain down both legs, muscle spasms, muscle loss, and weakness in his legs. Additionally,

he had some depression, for which he was taking Xanax. (Tr. 170).

As to limitations, claimant testified that he could not sit or stand for more than 20 to 30 minutes. (Tr. 169). He said that he had to stand up or lie down after 30 minutes. (Tr. 170). He stated that he was able to do housework for about 15 to 30 minutes at a time when he was on medications.

Claimant stated that he could stand for ten minutes at a time in an 8-hour period. (Tr. 171). He said that if he stood for three hours in one day, he would not be able to stand at all the next day. He reported that when he had a bad day, he had to stay in bed or in a reclined position to help the pain. He complained that standing and sitting were the most difficult for him, and that walking aggravated his lower back and hip joints.

Claimant reported that he could lift less than a gallon of milk from the ground. (Tr. 173). He said that he rarely got a full night's sleep because of back pain. (Tr. 174). He stated that he was tired and had to take naps all day long the next day. He testified that he could not reach overhead, and could climb a flight of stairs with effort. (Tr. 179).

Claimant rated his back pain at about a six or seven, to an eight or nine with activity. (Tr. 175, 177). He said that medication did not completely take the pain away. He reported side effects, including constipation, irritability, and fatigue. He complained that he had an average of one good day a week. (Tr. 178).

As to activities, claimant testified that he helped his children with their homework. (Tr. 178).

**(6) Administrative Hearing Testimony of Cindy Harris, Vocational Expert ("VE")**. The ALJ posed a hypothetical in which he asked Ms. Harris to assume a claimant who was 33 years old, had a tenth grade education and a GED, and had a CDL and CNA certificate; could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand, walk, and drive three hours for 3 hours in an 8-hour day; could sit for 8 hours in an 8-hour day; could do limited balancing only; was limited from climbing ladders, ropes, and scaffolds; was limited from working at unprotected heights and around dangerous moving machinery; could understand, remember, and carry out detailed but not complex type of decisions; could attend and concentrate for extended periods, and could deal appropriately with workplace peers, bosses, and changes in work of a routine nature. (Tr. 181-82). In response, Ms. Harris testified that claimant could not do his past work. (Tr. 182). However, she stated that he could work as a cashier, of which there were 10,000 positions statewide and 450,000

nationally; information clerk, of which there were 1,000 positions statewide and 67,000 nationally, and security guard, of which there were 1,500 positions statewide and 75,000 nationally. (Tr. 182-83). She further testified that an employee who took unnecessary breaks would probably be subject to termination. (Tr. 184).

**(7) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ incorrectly and/or improperly evaluated the evidence to conclude that claimant was not disabled, and (2) the ALJ is without substantial justification to conclude that claimant's testimony was not entirely credible by speculating that perhaps secondary gain from a lawsuit relating to an accident was causing claimant to exaggerate his symptoms, while failing to properly and fairly evaluate medical evidence in the record. Because I find that the ALJ erred in rejecting the treating physician's opinion, I recommend that this matter be **REVERSED** and that the claimant be awarded benefits.

In the Medical Source Statement, claimant's treating physician, Dr. Fitter, indicated that claimant's prognosis for improvement was poor. (Tr. 143). He determined that claimant could not reasonably be expected to engage in a full range of sedentary work consisting of 8 hours a day on a consistent and sustained basis. This determination of the treating physician is supported by the consulting neurosurgeon, Dr. McAllister who opined that claimant could do only the lightest

work activity, "if that".

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

Here, the ALJ has failed to consider the factors for rejecting Dr. Fitter's findings as required by this Circuit. *In Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), the court held that an ALJ must consider the following factors before declining to give weight to the opinions of a treating doctor: length of treatment, frequency of

examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Id*. at 621 (citing *Newton,* 209 F.3d at 456). The ALJ did not consider those factors in this case.

Additionally, the ALJ erred in finding that claimant would be able to maintain employment. Dr. Fitter determined that claimant could not reasonably be expected to engage in a full range of sedentary work consisting of 8 hours a day on a consistent and sustained basis. There is no support in the record for discounting that opinion.

A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002) (*citing Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)). Further, the ability to work only a few hours a day or to work only on an unpredictable or intermittent basis does not constitute the ability to engage in "substantial gainful activity." *Tucker v. Schweiker*, 650 F.2d 62, 64 (5th Cir. 1982); *Cornett v. Califano*, 590 F.2d 91, 94 (4th Cir. 1978); *Prestigiacomo v. Celebrezze*, 234 F.Supp. 999 (E.D. La. 1964).

Here, the ALJ erred in failing to determine whether claimant was capable not only of obtaining employment, but also maintaining it. *Watson*, 288 F.3d at 218. Dr. Fitter determined that claimant could not reasonably be expected to engage in a full range of sedentary work consisting of 8 hours a day on a consistent and sustained basis. Based on this evidence from claimant's treating physician, the decision of the ALJ should not stand.

Accordingly, it is my recommendation that the Commissioner's decision be **REVERSED**, and the claimant be awarded benefits. The undersigned recommends that April 26, 2005, which is also the date of the filing of the application, be used as the onset date for the commencement of benefits.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN**

**(10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION,* 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 20th day of June, 2008, at Lafayette, Louisiana.

*/s/ C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

15